IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| DONNA HUMPHRIES, * * Plaintiff, * * vs. * No. 4:06CV00606 SWW * PULASKI COUNTY SPECIAL SCHOOL * DISTRICT, * * Defendant. * | |

**Memorandum Opinion and Order**

Plaintiff Donna Humphries ("Humphries") brings claims of race discrimination against the Pulaski County Special School District ("District") pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, and the Arkansas Civil Rights Act ("ACRA"), § 16-123-101 *et seq.* She also asserts a breach of contract claim.

Before the Court are several motions in limine and the parties' cross-motions for summary judgment. For the reasons stated below, the Court denies the motions in limine and plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

**Background**

Humphries is a white female who has a doctorate degree in elementary education. She has been employed with the District since 1984, first as an elementary school teacher and then, for the past nineteen years, as an elementary school counselor. Since 2001, Humphries has applied for virtually every elementary school assistant principal position which has been available in the District. Most recently, she applied for assistant principal positions in August 2005. In 2007, she

applied for a director of counseling services position with the District. Humphries complains that in each instance, despite her qualifications, the District preferentially hired black applicants or applicants from outside the District for the vast majority of assistant principal positions. She also complains the District hired a black person for the director of counseling services position.

In August 2005, Humphries filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging the District continuously denied her the position of assistant principal based on her race and age.[1] After receiving her "Notice of Right to Sue," Humphries filed a complaint in this court on May 24, 2006. On September 26, 2007, she filed an amended complaint, adding the allegation that she was denied the director of counseling services position in the Summer of 2007.

In her motion for summary judgment, Humphries argues the District unlawfully uses race in its hiring practices for administrative positions. She asserts evidence of discrimination includes: 1) the mandatory use of interview committee members selected on the basis of their race; 2) a published preference in the district to "employ and advance blacks;" 3) published racial quotas or goals for hiring black administrators; and 4) a practice whereby the District hires and assigns assistant principals such that whenever an elementary school has an assistant principal assigned to it, at least one of the assistant principals will be of a different race than the principal. Humphries claims these practices and policies establish a pattern and practice of race discrimination against white people and are tantamount to an affirmative action plan. Humphries also submits statistical evidence which she claims shows the District favors blacks in its hiring of administrative personnel.

---

[1] Plaintiff filed a motion to dismiss her claims of age discrimination. *See* docket entry 95. The Court hereby grants the motion.

The District responds that its policy for promotion and employment for above entry level positions was promulgated in response to court decisions, orders, and settlement agreements, and that its goal is to hire the most qualified applicant in a way that does not racially identify a school. The District also challenges the validity and probative value of the statistical evidence offered by Humphries' expert, and submits the testimony of its own expert who states his analysis shows no statistically significant outcome that is adverse to Humphries. The District moves for summary judgment on the basis that Humphries has no evidence that it discriminated against her on the basis of race or that it violated its contract with her by hiring individuals from outside the District.

**Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury

could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Summary judgment should be cautiously granted in discrimination cases because such cases often depend on inferences rather than on direct evidence. *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir. 1994). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995).

## Discussion

Plaintiff brings race discrimination claims pursuant to Title VII, 42 U.S.C. §§1981 and 1983, and the Arkansas Civil Rights Act. She also brings a state law breach of contract claim.

**Title VII Claims**

Humphries contends she is entitled to summary judgment because the District's policies and practices constitute direct evidence that the District discriminates against white people. She also argues that expert testimony shows a stark statistical disparity in favor of hiring black elementary school administrators. The District moves for summary judgment on the basis that Humphries has no evidence to show it discriminated against her, asserting that the individuals chosen for the challenged positions were rated higher than Humphries and that is why she was not promoted. The District also contends Humphries' claim regarding the director of counseling services position is barred because she did not file a charge of discrimination with the EEOC for that position.

> [A] plaintiff may survive the defendant's motion for summary judgment in one of two ways. The first is by proof of 'direct evidence' of discrimination. Direct

evidence in this context is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action. Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext.

*Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004).

"In a typical Title VII case involving an affirmative action plan, an employer asserts in response to a plaintiff's prima facie showing of discrimination that its employment decision was made pursuant to an affirmative action plan and that its compliance with such a plan was a legitimate, nondiscriminatory reason for its actions. The question in those circumstances is whether the employer's affirmative action plan is valid." *Bass v. Bd. of County Comm'r,* 256 F.3d 1095, 1109 (11th Cir. 2001). Here, Humphries seeks to use evidence of the District's affirmative action plan in support of her claims of race discrimination.

> The first step in ascertaining whether the [employer] can be held liable for discrimination as a result of its affirmative action plans is a determination of whether there is sufficient evidence that it acted pursuant to those plans. The mere existence of an affirmative action plan by itself does not constitute direct evidence of discrimination unless there is also evidence that the employer acted pursuant to the plan in making employment decisions.
>
> However, the existence of an affirmative action plan, when combined with evidence that the plan was followed in an employment decision, is sufficient to constitute direct evidence of unlawful discrimination unless the plan is valid. Furthermore, even when a defendant denies having acted pursuant to its affirmative action plan, if there is evidence that it may have done so, a jury must decide whether the defendant in fact acted pursuant to its stated plan. When a jury finds that a government employer acted pursuant to an affirmative action plan,

>then the employer should be held liable for discrimination under Title VII and the Equal Protection Clause.  This is because, regardless of good intentions, a government employer commits unlawful discrimination when it takes race into account in a employment decision and acts pursuant to an invalid affirmative action plan.

*Id.*, at 1110-11.

The District does not dispute that when it fills above entry level positions its policy is to use bi-racial committees to conduct interviews, and that it used bi-racial interview committees to select the candidates to be recommended for the positions Humphries sought.  *See* Def's. Mot. Summ. J., Ex. A-1; Pl's.Mot. Summ. J., Ex. 1.  The District does not deny that its job posting for the two elementary school assistant principals included the language "THE DISTRICT WILL MAKE SPECIAL EFFORTS TO EMPLOY AND ADVANCE WOMEN, BLACKS, AND HANDICAPPED PERSONS."  *See* Pl's Mot. Summ. J., Ex. 2.  The District admits that in a document entitled "2005-2006 Annual Personnel Hiring and Deployment Report," dated July 14, 2006, the District stated as a goal for administrative personnel "[t]o attain a ratio of black administrators in the Pulaski County Special School District in proportion to the ratio of black certified personnel in the district in the preceding year."  *See* Pl's. Mot. Summ. J., Ex. 3; Def's. Resp. to Pl's. Statement of Facts, ¶3.  It does not dispute the record reflects that in the District's Annual Personnel Hiring and Deployment Reports dated April 12, 2005, and July 14, 2005, it stated as a goal for teachers "[t]o assure that blacks continue to be adequately represented in the census by employing black certified personnel in proportion to their availability in the relevant labor market."   *See* Pl's. Mot. Summ. J., Ex. 3; Def's. Resp. to Pl's. Statement of Facts, ¶4.

The District explains that its policies, practices, procedures, and goals were promulgated by the District in response to court orders requiring the District to desegregate and implement

procedures that would make the District attractive to minority students, teachers, and administrators. By way of background, the Court takes judicial notice of the following facts.

In 1982, the Little Rock School District sued the District, the North Little Rock School District, the State of Arkansas, and the Arkansas Department of Education, seeking consolidation of the three Pulaski County school districts as a remedy for alleged unconstitutional efforts to operate, maintain, and condone a racially segregated structure of public education. *Little Rock School District v. Pulaski County Spec. Sch. Dist.,* Case No. 4:82CV866 WRW ("Little Rock School Desegregation Case"). In an order entered in April of 1984, the district court found that the defendants had violated the United States Constitution by creating "racial isolation between and among the districts" that had caused six specific "interdistrict effects." *Little Rock Sch. Dist. v. Pulaski County Spec. Sch. Dist.,* 584 F.Supp. 328, 349-51 (E.D.Ark. 1984). In making his findings as to the District, the then presiding district court judge, the Honorable Henry Woods, recounted that in 1968 a private desegregation suit was filed against the District. As a result of the litigation, the District filed a plan for the 1971-72 school year which called for the integration of faculty and staff. In June 1973, the parties to that litigation entered into a consent decree, which required, among other things, at least six black elementary school principals and two black secondary school principals. It also required bi-racial committees and that black teachers be employed in proportion to the ratio of black pupils in the District. In his 1984 order, Judge Woods found the District "failed to demonstrate any efforts or intentions to comply" with that 1973 consent decree, noting the District failed to meet goals for the hiring and promotion of black principals, teachers, and administrators. 584 F.Supp. at 347-48. In an order entered in November 1984, Judge Woods determined that consolidation was the only remedy that could

correct the county-wide interdistrict violations. *Little Rock Sch. Dist. v. Pulaski County Spec. Sch. Dist.,* 597 F.Supp. 1220 (E.D.Ark. 1984). The defendants appealed both decisions, and in 1985, the Eighth Circuit affirmed the district court's finding on liability for interdistrict constitutional violations by the defendants, but reversed the consolidation remedy. *Little Rock Sch. Dist. v. Pulaski County Spec. Sch. Dist.,* 778 F.2d 404 (8th Cir. 1985). The Eighth Circuit Court of Appeals adopted Judge Woods' finding that the District acted concurrently and independently to perpetuate segregation by, among others things, failing to meet staff hiring goals. *Id.* at 427.

In response to the Eighth Circuit's decision, the three Pulaski County school districts negotiated a settlement agreement as well as separate comprehensive settlement plans and submitted them to the district court in 1989. The district court rejected the agreement and plans as submitted and ordered the parties to implement a more comprehensive plan. *See Little Rock Sch. Dist. v. Pulaski County Spec. Sch. Dist.,* 716 F.Supp. 1162 (E.D.Ark.1989). Later, after the Arkansas State Legislature passed a bill funding the over $100,000,000.00 that the State was obligated to pay the three school districts under the settlement agreement, the district court entered an order approving, as modified, the settlement agreement. *See Little Rock Sch. Dist. v. Pulaski County Spec. Sch. Dist.,* 726 F.Supp. 1544 (E.D.Ark. 1989). Each of the three school districts appealed the district court's decisions, and the Eighth Circuit reversed and remanded the case with instructions to approve the settlement agreement and the four settlement plans as submitted by the parties. *Little Rock Sch. Dist. v. Pulaski County Spec. Sch. Dist.,* 921 F. 2d 1371 (8th Cir. 1990). In holding the settlement plans "not facially unconstitutional," the Eighth Circuit

recognized that the parties' compliance with the plans would have to be carefully monitored.  *Id. at 1388*.

The District operated under its 1990 settlement plan until March 2000, when the district court approved a new desegregation plan submitted by the District called "Plan 2000."[2]  It is that plan to which the District remains bound and on which it is monitored.[3]  Regarding staffing, Plan 2000 provides: "The PCSSD shall recruit applicants for each available administrative position, by internal and external means, in a manner designed to communicate, broadly, its availability and to develop a racially diverse pool of applicants.  The Assistant Superintendent for Desegregation shall, with the cooperation of the Assistant Superintendent for Personnel, be informed of the make-up of such applicant pool and they shall have the authority to direct that additional recruitment take place prior to the offering of a position to a particular applicant."[4]  Plan 2000 also requires the District to submit statistical reports showing the racial make-up, in each school, of administrators, faculty, other professional staff, and support staff, and the racial make-up, by category, of the various categories of administrators, faculty, support staff, and other workers employed in the District.[5]

In its May 2003 Report on the Status of the Pulaski County Special School District's Implementation of Plan 2000, the Office of Desegregation Monitoring ("ODM") found that the

---

[2]*See* Little Rock School Desegregation Case, docket entry 3347.

[3]The Court notes that the District filed a motion in October 2007 in the Little Rock School Desegregation Case asking the Court for a declaration of unitary status. *See* docket entry 4159. That motion remains pending.

[4]*Id.*, docket entry 3309, Ex. A,  p. 6 L.(1).

[5]*Id.,* p.7 N.(3)(e) and (f).

District "lacked a coherent process for identifying and nurturing African-Americans in the district to seek administrative positions" and that it "lacked a consistent guideline that defined what constituted a diverse pool of applicants."[6]  In its December 2006 Update on the Pulaski County Special School District's Implementation of the Staffing Provisions of Plan 2000, the ODM found the District still had no guideline for what constitutes a diverse applicant pool.  *See* Pl's. Mort. Summ. J., Ex. 3.[7]

In addition to the policies, practices, and procedure employed by the District, Humphries argues her statistical evidence lends further support to her claim of intentional race discrimination.  The Supreme Court has held that where gross statistical disparities can be shown, they alone may constitute prima facie proof of a pattern or practice of discrimination. *Hazelwood. Sch. Dist. v. United States,* 433 U.S. 299 (1977).  It is undisputed that Humphries applied for eight positions from 2001 through 2007, and was included in eight applicant pools, seven for assistant principal and one for the director of counseling services position.  *See* Def's. Statement of Undisputed Facts, No. 85 (docket entry 59); Pl's. Resp.(docket entry 75).  The parties seem to agree that applicant pool data is the most appropriate reference population, and the District's expert analyzed twelve applicant pools which occurred during the time period from 2001 through 2007 for administrative positions.  He found that in none of the twelve pools was there a statistically significant outcome adverse to Humprhies; that is, no pool had a standard deviation greater than 2.0.  *See* Def.'s Mot. Summ. J., Ex. 6.[8]

---

[6]*Id.,* docket entry 3755.

[7] *Id.*, docket entry 4079.

[8]Citing *Castaneda v. Partida,* 430 U.S. 482, 497 n.17 (1977), the Supreme Court in *Hazelwood* suggested that a two-to-three point deviation is acceptable statistical proof of discrimination.  *See* 433 U.S.

Humphries takes issue with the availability and accuracy of the applicant flow data.[9] She claims that the data was not provided in a timely manner, contains inaccuracies, and is tainted by the District's policies and practices of favoring blacks and placing administrators so that the principal and at least one of the assistant principals are of different races. Her expert submits statistics which he says show that starting in 2003 blacks are over-represented in the applicant pools at well above 2.0 standard deviations. She contends the appropriate reference group is the number of certified teachers in the seven central Arkansas counties. *See Hazelwood, supra* (in case involving alleged discrimination in hiring of teachers, proper comparison was between racial composition of Hazelwood's teaching staff and the racial composition of the qualified public school teacher population in the relevant labor market). Humphries references the District's stated goal to attain a ratio of black administrators in the District in proportion to the ratio of black certified personnel in the District in the preceding year.[10]

In *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095 (11th Cir. 2001), a white male sued the county when he was not hired for one of three training instructor positions. He asserted a claim of race discrimination under Title VII and relied in part on the county's affirmative action plan in

---

at 309 n.14.

[9] In May 2007, the Court ordered the District to provide Humphries with information about the applicants for elementary school assistant principal positions for which she applied during the years 2001-2007. The District claims it produced all the information it had about twelve different applicant pools and provided that to Humphries. It admits the documentation was not complete. When Humphries produced her expert's report in August 2007, the District realized it would need to employ an expert to rebut plaintiff's expert's findings, and that Humphries was focusing her claim on policies of the District that had been in effect for many years in response to various court orders and decrees. Thus, in the Fall of 2007, the District renewed its efforts to compile complete applicant pool information to provide its expert. As they compiled the documentation, the District provided it to Humphries as well.

[10] As explained *infra*, the Court finds that the District's goal of attaining a ratio of black administrators in proportion to the ratio of black certified personnel is part of its response to the court-approved consent plan to address an unconstitutional racial imbalance in the District's work force.

11

support of his claim. The Eleventh Circuit reversed the district court's decision granting the county's motion for summary judgment, holding that "where there is an invalid affirmative action plan in effect relating to the employer's allegedly discriminatory actions, that plan constitutes direct evidence of discrimination if there is sufficient circumstantial evidence to permit a jury reasonably to conclude the employer acted pursuant to the plan when it took the employment actions in question." *Id.* at 1111. The *Bass* court held that in a Title VII claim, the plaintiff has the burden of proving the affirmative action plan is invalid. *Id.* at 1115.

After considering all the relevant and admissible evidence submitted by the parties, the Court finds Humphries has failed to set forth direct evidence of unlawful discrimination. "Evidence is 'direct' if it establishes 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the employer's decision." *Putnam v. Unity Health Sys.,* 348 F.3d 732, 735 (8th Cir. 2003)(citation omitted). Humphries has presented no evidence that the "affirmative action" plan played any part in the District's decisions not to promote her.

The evidence is unrefuted that Humphries did not make the cut for a second interview as to the assistant principal positions filled in August of 2005. Further, the evidence is unrefuted that she finished third out of five applicants for the director of counseling services position, and the person recommended and hired for the position scored substantially higher than Humphries. Unlike in *Bass*, Humphries presents no evidence that the persons hired failed to meet the minimum qualifications for the assistant principal positions or the counseling position.

Humphries' case is also unlike that in *Donaghy v. City of Omaha,* 933 F.2d 1448 (8th Cir. 1991), where there was evidence that, but for the City's policies and practices, Donaghy would

have been promoted.  Donaghy was a white police sergeant who brought suit under 42 U.S.C. § 1983, alleging that the city's affirmative action plan denied him the opportunity to compete for a promotion.  The Eighth Circuit held that Donaghy had no standing to complain about positions for which he was not referred when he did not rank high enough on the list of candidates to be referred for an interview.  The Eighth Circuit held Donaghy did have standing to complain about another position where, if the city had followed rank order, he would have had an opportunity for referral for a promotion.  There is no evidence here that Humphries was negatively affected by the District's policies.

Even assuming Humphries can establish that the District followed its affirmative action plan in making the challenged employment decisions, she cannot establish that the plan is invalid.

> The validity of a consent decree's affirmative action plan is a question of law.  In a reverse discrimination case, 'the satisfaction of the four part *McDonnell Douglas* test will not necessarily show a prima facie violation' of section 1983 where the evidence demonstrates that the 'plaintiff's treatment by the employer was pursuant to a bona fide affirmative action plan.'
>
> .   .   .
>
> In a reverse discrimination case challenging a consent decree's affirmative action plan, the legal standards will be similar but not identical to those used when assessing a public employer's voluntary affirmative action plan.  An affirmative action consent decree stands somewhere in between a voluntary affirmative action program . . . and a remedial plan that a court has imposed after making a formal finding of intentional discrimination.  Unlike a voluntary affirmative action plan, a consent decree is subject to court approval before it can take effect, is often approved only after a fairness hearing, and commonly remains under the court's jurisdiction for a number of years.  Because a federal court is not just a 'recorder of contracts,' but 'an organ of government constituted to make judicial decisions,' a 'consent decree must meet three requirements.  First, it must 'spring from and serve to resolve a dispute within the court's subject matter jurisdiction;' second, it must 'come within the general scope of the case made by the pleadings;' and third, it must 'further the objectives of the law upon which the complaint was based.'  While the entry of an affirmative action consent decree does not guarantee that the decree

>   serves a remedial purpose or is narrowly tailored, the heightened judicial oversight inherent in a properly entered decree helps attain that end.
>
>   Accordingly, this court has recognized that when an employer is called upon to show a remedial purpose, the employer can meet its burden by producing evidence 'that the employer implemented its plan . . . in adherence to a court order, whether entered by consent or after litigation.'  As with a voluntary affirmative action plan, an employer subject to a consent decree plan must also demonstrate that the plan was a response to a conspicuous racial imbalance in its work force, and that the plan is sufficiently narrowly tailored to the remedial purpose.

*Id.* at 1458-59 (citations omitted).

The Court finds the District's policies and practices were implemented in adherence to a valid consent decree plan mandated by a court's findings of the District's long history of intentional race discrimination.  While Humphries argues the District is no longer subject to monitoring as to its administrative staffing and has met or perhaps exceeded its goals, the Court is not prepared to say the District's plan is invalid and that the District is no longer subject to an agreement approved by the court in the Little Rock School Desegregation Case.[11]  The Court further finds the District has demonstrated that its plan was "a response to a conspicuous racial imbalance in its work force, and that the plan is sufficiently narrowly tailored to the remedial purpose." *Donaghy,* 933 F.2d at 1459.

Even assuming Humphries can establish a *prima facie* case of discrimination, the District has come forth with a legitimate, non-discriminatory reason for its employment decisions, and Humphries has failed to put forth sufficient evidence to establish a genuine issue of fact that the District's proffered non-discriminatory reasons for its actions were pretextual.

---

[11] The Court notes the District's motion asking the for a declaration of unitary status is pending in the Little Rock School Desegregation Case (docket entry 4159).  The Court further notes that pursuant to Clerk's Office procedure, when Humphries filed her complaint, staff of the presiding judge in the Little Rock School Desegregation Case reviewed her complaint to determine whether it was related to the Little Rock School Desegregation Case.  Based upon a determination that it was not related, Humphries case was not transferred as a related case but remained as originally randomly assigned.

**Claims Brought Pursuant to 42 U.S.C. § § 1981 and 1983**

With respect to the claims for relief under § 1981, § 1983, those statutes afford plaintiff no greater protection than Title VII.[12] The elements of substantive claims of employment discrimination are the same under those sections as they are under Title VII.[13] For the same reasons the Court finds Humphries fails to show intentional discrimination under Title VII, the Court finds she fails to establish intentional discrimination under § § 1981 and 1983.[14]

**State Claim for Unlawful Discrimination and Breach of Contract**

In *Adair v. Burgett,* 210 F.3d 378, 2000 WL 485256 (8th Cir. 2000) (unpublished per curiam), a case which originated in this Court, the Eighth Circuit affirmed the grant of summary judgment on the plaintiff's constitutional claims. With regard to the state claim, however, the Eighth Circuit, quoting *Birchem v. Knights of Columbus,* 116 F.3d 310, 314 (8th Cir. 1997), stated that "'when federal and state claims are joined and the federal claims are dismissed on a motion for

---

[12] The statute of limitations for actions under § 1983 is three years. *See Clark v. Mann,* 562 F.2d 1104, 1112 (8th Cir. 1977). The statute of limitations for Humphries' § 1981 claims is also three years. *See Martin v. Georgia-Pacific Corp.,* 568 F.2d 58, 62-63 (8th Cir.1977)(statute of limitations for § 1981 claims is three-years); *Price v. M & H Valve Co.,* 177 Fed.Appx. 1, 10 (11th Cir.2006) (§ 1658 does not apply to a § 1981 failure-to-promote claim because such a claim would have stated a cause of action under the original version of § 1981 ). Cases arising under the ACRA are reviewed in the same manner as Title VII claims. *See Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 615 n.3 (8th Cir. 2000).

[13] The Court finds Humphries' Title VII failure to promote claim as to the director of counseling services should be dismissed for failure to exhaust her administrative remedies. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).(discrete acts such as failure to promote are easy to identify, and each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice).

[14] The court in *Bass v. Bd. of County Comm'r*, 256 F.3d 1095, 1114 (11th Cir. 2001), points out that when a plaintiff challenges an affirmative action plan under the Equal Protection Clause, the defendant has the burden of proving that the plan satisfies strict scrutiny, *i.e.* a compelling governmental interest justifying the plan and a plan narrowly tailored to remedy the effects of prior discrimination. *See City of Richmond v. J.A. Croson Co.,* 488 U.S. 469 (1989); *see also Donaghy*, 933 F.3d at 1459. In a Title VII claim, the burden is on the plaintiff to show the plan is invalid. *See Johnson v. Transp. Agency, Santa Clara, Cal.,* 480 U.S. 616,626-7 (1987).

summary judgment, the pendent state law claims are dismissed without prejudice to avoid [n]eedless decisions of state law . . . as a matter of comity . . .'" *Adair, supra.*

Although § 1367 and *Birchem* appear to confer discretion on the Court to retain jurisdiction of Humphries' state law claims, the language of *Adair* is unequivocal. Accordingly, based on *Adair,* the Court finds that Humphries' state law claims of violation of the Arkansas Civil Rights Act and breach of contract should be dismissed without prejudice.

## Conclusion

IT IS THEREFORE ORDERED that defendant's motion for summary judgment[15] is granted. Plaintiff's state law claims are dismissed without prejudice. Her race discrimination claims are dismissed with prejudice, and her age discrimination claims are dismissed without prejudice. Judgment will be entered for defendant.

DATED this 6th day of June 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[15]Docket entry 57.