IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DONNA HUMPHRIES                                              PLAINTIFF

v.                            Case No. 4:06-cv-606-DPM

PULASKI COUNTY SPECIAL
SCHOOL DISTRICT                                             DEFENDANT

## ORDER

The jury's verdict on Dr. Humphries's breach-of-contract and § 1981/
§ 1983 discrimination claims has raised several issues for decision.

### The Pending Issues

First, the Court took under advisement the District's timely Rule 50
motion for judgment as a matter of law on Dr. Humphries's contract claim
and her stand-alone discrimination claim—her claim alleging race
discrimination apart from the District's affirmative action policies. The Court
twice denied the District's motion on Dr. Humphries's discrimination claim
based on the District's affirmative action policies. The District has renewed
two-thirds of its motion in a post-trial filing, *Document No. 213*, which also
seeks a new trial in the alternative. The District has not added to its argument

at trial for judgment as a matter of law on the stand-alone discrimination claim.

Second, the Court asked the parties to brief the effect of the jury's verdict on the pending validity issue.   The Court had ruled, with encouragement from the parties, that the validity of the District's affirmative action policies was a question of law.  *Setser v. Novack Inv. Co.*, 657 F.2d 962, 969 (8th Cir. 1981), *cert. denied*, 454 U.S. 1064 (1981).   Further, to avoid confusing the jury and prejudicing either party, the Court ruled that the disputed facts about validity would be tried to the bench.  The Court held that part of the trial during two days in late August.   At the end of those proceedings, the Court left the record open on validity so that it could consider any proof relevant to validity that came in during the jury phase, as well take any additional proof outside the jury's presence.  In the event, after he testified for the jury, Dr. David Sharp (Humphries's expert) gave the Court alone some expert testimony about his statistical analysis of the District's policies and hiring patterns.   And the parties have now filed helpful briefs about the verdict's impact on the validity issue.

Third, and relatedly, after the jury phase Dr. Humphries moved to amend her complaint again.  *Document No. 217.*  She says:

> If, and to the extent Plaintiff's pending Amended and
> Supplemental Complaint falls short of explicitly asserting a claim
> that [P]laintiff will suffer the inability to compete for
> administrative positions on the same footing as black applicants
> in the future as a result of the District's affirmative action policies,
> Plaintiff requests leave to amend her complaint to make that
> claim explicit as the issues were tried by consent or over the
> objection of the District.

*Document No. 217, at 1.* The District opposes the proposed amendment . It

argues, in essence, that the prospective-application issue was neither pleaded

nor tried and that the amendment is really about pressing forward on the

validity issue notwithstanding the jury's verdict.

## Judgment as a Matter of Law

1.      To the extent the issue is not mooted by the jury's verdict, the

Court denies the District's motion for judgment on Dr. Humphries's

discrimination claim based on the District's affirmative action policies.  A

reasonable jury could have found for or against the District on this claim

based on the extensive record made before the jury at trial.  FED. R. CIV. P.

50(b)(3).

2.      Dr. Humphries's stand-alone race discrimination claim is in a

peculiar posture.  Under the agreed interrogatories, this issue was submitted

to the jury as an alternative to Dr. Humphries's policies-based discrimination

claim.  *Document No. 209, Interrogatories Nos. 1 & 2.* The jury concluded that

race through the District's affirmative action policies was a motivating factor in the District's decision not to promote Dr. Humphries. The jury's "yes" answer to Interrogatory No. 1 sent it to Interrogatory No. 3, which asked whether the District would have made the same decision apart from race. The jury answered "yes" to this interrogatory too.

The Court concludes two things here. First, the jury's verdict moots the District's motion for judgment because there was no finding for Dr. Humphries on the stand-alone race claim. The parties and the Court agreed — either with intention or by oversight — to the alternative submission of the two race claims. And the jury's "yes" answer for Dr. Humphries on the policies-based Interrogatory No. 1 ended its consideration of the other claim and implicitly decided that claim for the District. Finally, neither party asked to send the jury back for more deliberations to clarify this issue after the verdict was published. On this analysis, the District's motion for judgment made at the trial on the stand-alone race claim is denied as moot because the District has prevailed on this claim.

Second, any error in the alternative submission, plain or otherwise, was harmless. As the Court noted tentatively at trial, there was insufficient evidence to support a verdict that race — apart from the affirmative action

policies—played any part in the District's promotion decisions.  It was all about the policies—that was the thrust and strength of Dr. Humphries's case. Witness Lou Jackson, a member of one or more of the interview committees, did acknowledge her deposition testimony that race played a part in her ranking of promotion candidates.  But her testimony as a whole, and the testimony of every other witness on this point, made it clear that race came into the promotion process only through the District's affirmative action policies for staffing decisions, not as a separate motivating factor.  There simply was no proof that racial considerations apart from the policies, or racial animus of any kind, was in play.  Therefore, to the extent Dr. Humphries's stand-alone race claim survived the verdict, the Court grants the District judgment as a matter of law on it.  FED. R. CIV. P. 50(b)(3).

3.     Dr. Humphries claimed a breach of this provision of her contract with the District: "Priority consideration will be given to qualified internal applicants for vacant administrative positions before the District employs an external applicant." *Plaintiff's Exhibit 8, at § 9A.*  The Court ruled that the term "priority consideration" was ambiguous; it could mean a variety of things to reasonable people.  And believing that the term's meaning depended on disputed extrinsic evidence—for example, the parties' course of

performance—the Court left the ambiguity for the jury to resolve at trial as a threshold issue on Dr. Humphries's breach claim. *Smith v. Prudential Property and Casualty Ins. Co.*, 340 Ark. 335, 340–41, 10 S.W.3d 846, 851 (2000). The Court, with the parties' approval, gave standard instructions about the means for ascertaining the parties' intent in the contested term. *Instructions No. 18–23*.

Dr. Humphries's contract claim boiled down to the final element because the others were essentially undisputed. *Instruction Nos. 16 & 17*. That final element was whether she proved "that the District did not give 'priority consideration' to Dr. Humphries's applications for promotion."[1] The jury answered "yes" to the breach interrogatory, and awarded Dr. Humphries $63,244.00 in damages.

The Court grants the District's motion for judgment as a matter of law on the contract claim. As it turned out, the extrinsic proof about the parties'

---

[1] Instruction No. 16 provided:
Dr. Humphries claims that the District breached its contract with her and has the burden of proving each of four essential propositions: First, that Dr. Humphries and the District entered into a contract; Second, that the contract required the District to give "priority consideration" to Dr. Humphries's applications for promotion; Third, that Dr. Humphries did what the contract required of her; and Fourth, that the District did not give "priority consideration" to Dr. Humphries's applications for promotion.

contract was not disputed. Therefore the construction and legal effect of the ambiguous term "priority consideration" was a matter of law for the Court, not of fact for the jury. *Smith*, 340 Ark. at 340–41, 10 S.W.3d at 850.

This ambiguous term is part of the Professional Negotiations Agreement between the District and The Pulaski Association of Classroom Teachers. Without objection, Dr. Humphries introduced an excerpt from the Agreement that included the "priority consideration" term. *Plaintiff's Exhibits 8 & 9.*[2] In her testimony, she pointed out the contested term and another term about "Promotion with Supplemental Contract." *Plaintiff's Exhibit 8, at § 8B.* This other term contains an explicit tiebreaker: "when it is determined that a tie exists with regard to the selection of the most qualified candidate, then seniority shall be the determining factor." Dr. Humphries testified that this term shows that the parties knew how to write a tie-breaking provision if they intended to do so. Dr. Humphries did not testify, however, about what she thought the "priority consideration" term meant or required of the District, how the District had implemented the term, or other internal applicants' experience with it. She offered no evidence on these issues.

_____

[2] There were actually two excerpts, one from the 2000-2003 Agreement and one from the 2003–2006 Agreement. They are identical in all material respects.

The District's witnesses spoke as one on the "priority consideration" term. Every witness who gave evidence on this point testified that the term was a tiebreaker: if an external applicant and an internal applicant tied at the end of the selection process, then the internal applicant got the job.

The record simply does not contain any disputed extrinsic evidence on the contract claim. The District's testimony about the meaning of "priority consideration" was not contradicted. There was no testimony that the term had meant different things at different times. There was no testimony about varying customs in the education field ascribing different meanings to the term. Dr. Humphries's testimony pointing to another promotion term of the contract, while relevant to the contested term's meaning, does not create a dispute in the extrinsic evidence either. The words are what they are. Of course the two parts of the whole should be construed in light of one another. *Smith v. Southern Farm Bureau Casualty Ins. Co.*, 353 Ark. 188, 192, 114 S.W.3d 205, 207 (2003). But there was no dispute that this was the parties' contract; indeed Dr. Humphries and the District stipulated to the contract's existence, and the Court so instructed the jury. *Instruction No. 17.*

In the absence of *disputed* extrinsic evidence, the meaning of the ambiguous term "priority consideration" is a question of law for the Court.

*Smith*, 340 Ark. at 340–41, 10 S.W.3d at 850.  And on the record presented to the jury, the District is entitled to judgment as a matter of law on Dr. Humphries's contract claim for two reasons.  FED. R. CIV. P. 50(b)(3).

First, considering all things material to discerning the meaning of the ambiguous "priority consideration" term, the Court concludes that it creates a tiebreaker as the District argues.  There was no evidence received that the term had ever operated in any other fashion.  This was the unanimous interpretation of District employees involved in hiring for many years.  This construction does not overlook the other tie-breaker provision.   But contracting parties are free to express similar notions in different language. And there is no rule of law requiring imperfect people to be either perfectly clear or perfectly consistent in their drafting.  This agreement, we should not forget, is between a teacher's union and a school district.  Ambiguity has its uses in reaching consensus in charged relationships like that one.  Finally, the best proof about the term's meaning is in its operation through years and years of promotion decisions.   There the record is clear: the "priority consideration" term was a tiebreaker.

Second, Dr. Humphries's argument that the term means some stronger preference for internal candidates stumbles over the proof.  In every instance,

another internal candidate (and often more than one) was ranked ahead of Dr. Humphries in the hiring process.  On that record, the District did not breach as to Dr. Humphries—even under her interpretation that the disputed term was not a tiebreaker—when the District hired an external candidate.  As between two internal candidates the "priority consideration" term has no work to do; there is no ambiguity on that score.

Dr. Humphries asks the Court to consider a 1994 arbitration decision involving the District and the teacher's union in construing the contract.  The Court declines to do so.  The decision was not admitted into evidence.  The one witness questioned about it (Deborah Coley, who supervised District promotion decisions for a time) had no knowledge about the decision.  In ruling on the District's motion for judgment, the Court should not expand the record beyond what the parties presented before resting their case. 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529 (3d ed. 2008).

4.    The Court sees no legal basis for granting the District's alternative motion for a new trial on the contract claim.  It is denied.  If the judgment for the District on this issue is reversed or vacated, the Court would still deny a new trial. FED. R. CIV. P. 50(c)(1).  Either the Court is right or wrong about the

contract claim. But whatever happens on that issue, no good reason exists to try it again.

## The Affirmative Action Policies' Validity

5. This leaves the validity issues, which the Court let hang fire pending the jury phase and further proof. Dr. Humphries urges the Court to decide the validity of the District's affirmative action policies. She argues primarily from *Edwards v. Jewish Hospital of St. Louis*, 855 F.2d 1345 (8th Cir. 1988) and standing cases such as *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656 (1993). The District contends that the jury's "same decision" verdict should end the entire case. It stands on *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). And relying on an opinion from Judge Eisele in a similar lawsuit, *Flowers v. Jefferson Hospital Association, Inc.*, 1992 U.S. Dist. LEXIS 22923, at *7–*12, the District says *Edwards* did not survive *Price Waterhouse*.

The threshold inquiry is the nature of Dr. Humphries's federal claim. She challenges the District's affirmative action policies as the vehicle for unlawful discrimination on the basis of race in promotion decisions. She alleges that the District's repeated failure to promote her violated "42 U.S.C. 1981 and 1983 by depriving [her] of her equal protection rights under the

Fourteenth Amendment of the United States Constitution." *Document No. 178-2, at* ¶ 20; *see also* ¶ 21. She abandoned her Title VII claim. So as the case stands, Dr. Humphries's claim is under § 1981/§1983.[3]

There is a deeper point. The contours of this claim are determined by § 1983 precedent, not § 1981 precedent. It is settled law in this Circuit that "a claim alleging a violation of § 1981 may not be brought directly against a state actor, but must be brought under § 1983[.]" *Lockridge v. Bd. of Trustees of the University of Arkansas,* 315 F.3d 1005, 1007 (8th Cir. 2003) *(en banc); see also Artis v. Francis Howell North Bank Booster Assn., Inc.,* 161 F.3d 1178, 1181 (8th Cir. 1998). Thus the difficult and interesting questions about the same-decision defense that would be raised by a pure § 1981 claim against a private employer — questions implicating *Edwards, Price Waterhouse, Flowers,* and the Civil Rights Act of 1991 — are not in the case. Instead, the Court must scrutinize Dr. Humphries's hybrid claim with a § 1983 analysis.

The controlling precedent is *Texas v. Lesage,* 528 U.S. 18 (1999) *(per curiam).* This decision is much applied in other Circuits, though as best the

---

[3] Dr. Humphries also has a live claim under an unspecified part of the Arkansas Civil Rights Act. Complaint ¶¶ 27–28. The parties make no post-trial argument for treating this claim any differently than her § 1981/ § 1983 claim. The Court concludes that these claims are identical in this case.

Court can tell the Eighth Circuit has neither cited nor applied it. *E.g., Petit v. City of Chicago*, 352 F.3d 1111, 1113 (7th Cir. 2003); *Aiken v. Hackett*, 281 F.3d 516, 519–20 (6th Cir. 2002), *cert. denied*, 537 U.S. 817 (2002); *Donahue v. City of Boston*, 304 F.3d 110, 116–21 (1st Cir. 2002); *see generally*, 1 SHELDON H. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION § 4:10, pp. 4-48–4-52 (4th ed. 2010).

*Lesage* is a strikingly similar case. After he was denied admission to a graduate program, while at least one minority applicant was admitted, the white plaintiff challenged the University of Texas's admission process. The fact that the University had considered race through an affirmative action policy in that process was undisputed; here the jury has found that the District considered race through its affirmative action policies in not promoting Dr. Humphries. The University established on summary judgment that Lesage would not have been admitted in any event; here the jury has found that the District would not have promoted Dr. Humphries in any event. Lesage alleged an Equal Protection violation under § 1981/§1983 and a Title VII violation. 528 U.S. at 19–20. His Equal Protection claim mirrors Dr. Humphries's remaining claim.

The Supreme Court's analysis of the same-decision defense was pithy. The University was entitled to judgment on Lesage's § 1983 action seeking damages. "Simply put, where a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting relief under § 1983." *Lesage*, 528 U.S. at 21. The District stands in the same position as the University. It is therefore entitled to judgment on all Dr. Humpries's claims for damages based on nonpromotion, as well as her request for an injunction promoting her and requiring future promotion.

The Supreme Court was equally clear, however, about claims for prospective injunctive relief against continuing race-conscious policies. "Of course, a plaintiff who challenges an ongoing race-conscious program and seeks forward-looking relief need not affirmatively establish that [s]he would receive the benefit in question if race were not considered." 528 U.S. at 21. In that kind of case, the plaintiff is injured by "the inability to compete on an equal footing." *Lesage*, 528 U.S. at 21, *quoting Northeastern Florida Chapter*, 508 U.S. at 666 (1993). Lesage's claim against the University for "maintaining" a race-conscious admissions program, and his companion request for injunctive

-14-

relief against the program, survived the same-decision defense.  528 U.S. at 21–22.[4]

6.      Whether Dr. Humphries has any remaining viable claims thus comes down to what was pleaded, argued, and tried.  Probably recognizing this, Dr. Humphries moved after trial to amend her complaint again.  If her federal claims are unclear, she says, her proposed pleading specifically alleges unequal footing (past and future) and the District's continuing violation. *Document No.* 217-1, at ¶¶ 7, 9, 16, 18, 19, 20, 22, & 28.  These issues, she says, were tried by consent or over the District's objections, and therefore Rule 15(b) allows amendment if need be.  The District objects.  It first argues that the proposed amended complaint would be futile.  Under *Lesage*, this is mistaken.  The District also contends these issues were never tried, either by consent or over objection.

The Court must, and does, liberally construe Dr. Humphries's active complaint.  *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004).  Her Amended and Supplemental Complaint, *Document No. 178-2*, is the third

---

[4]*Lesage*'s § 1981 claim also survived.  In this case that possibility (at least insofar as Dr. Humphries seeks damages) is foreclosed by *Lockridge* and *Artis*, circuit precedent that binds this Court.

iteration of Dr. Humphries's claims.  Considered as a whole, her pleading is ambiguous.

Unlike Lesage, Dr. Humphries does not allege that the District is maintaining the affirmative action policies.  528 U.S. at 21.  But of course it is; and Dr. Humphries alleged (and proved) her repeated and unsuccessful efforts to get promoted over many years, not a "discrete governmental decision[.]"  *Ibid.*  The District has never disputed, moreover, the existence of some affirmative action policies.  *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 693–94.  This undisputed fact eliminates any surprise or uncertainty from Dr. Humphries implying, but not pleading, that the District's race-conscious policies are on-going.

The ambiguities deepen, however, in her federal claim and her prayer for relief.  Dr. Humphries's § 1981 / § 1983 claim looks backwards: the District "*has* unlawfully *discriminated*" against her by failing to promote her. *Document No. 178-2, at ¶¶ 20-21* (emphasis added); there is no mention of unequal-footing or an alleged injury that would support enjoining the policies whether Dr. Humphries would have been promoted or not; there is no mention of future applications; and there is no mention of a continuing violation.  *Ibid.*  Dr. Humphries's requested relief looks both backward and

forward.  Among other things, she sought:

- a declaration that the District's "acts complained of herein violate" her constitutional rights;

- an order requiring the District to publish the ruling in her favor to all District hiring personnel and publish that it "has abandoned" the challenged policies;

- an injunction against bi-racial committees, some interview forms, publication of District affirmative action reports or goals, and consideration of race in hiring and promotions;

- an injunction requiring consistent rules for getting an interview, consistent promotional criteria, and individual interviews;

- an order requiring the District to promote her now and in the future;

- back-pay, front-pay, benefits, compensatory damages for emotional pain; and

- attorney's fees and costs.

*Document No. 178-2, at 6–8.*

This is a mixed bag.  It seeks both redress for Dr. Humphries and change in the District's policies going forward.  Prospective injunctive relief is clearly requested.  Like the claims, however, the prayer is silent about Dr. Humphries's entitlement to prospective injunctive relief no matter whether her past-promotion claim succeeded or failed.  Dr. Humphries sought forward-looking relief based on what had happened, not on what was

happening or what would happen.  The asserted injury, in other words, was complete, not in the offing.

The federal rules require only notice pleading.  FED. R. CIV. P. 8(a)(2); *Huggins v. FedEx Ground Package System, Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  Liberal construction, however, does not require either the court or the opposing party "to divine a litigant's intent and create claims that are not clearly raised."  *Bediako*, 354 F.3d at 840.  The parsing needed to discern exactly what Dr. Humphries was claiming and seeking makes the point.  Liberally construed as a whole, her complaint leans in too many directions to put everyone on notice Dr. Humphries sought forward-looking injunctive relief against the District's affirmative action policies whether she prevailed or not on her failure-to-promote claims.

7.     Should the Court grant Dr. Humphries leave to amend now?  Federal Rule of Civil Procedure 15(b)(2) governs.  "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."  The timing of any motion to conform the pleadings based on trial by consent is immaterial.  The Rule expressly allows such a motion "at any time, even after judgment[.]"  FED. R. CIV. P. 15(b)(2).  The Rule's purpose "is to ensure that the pleadings do not

obstruct a court's ability to address the issues that were presented and defended at trial." *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 590 (8th Cir. 2003); *see also Clark v. Martinez*, 295 F.3d 809, 814–16 (8th Cir. 2002) (both sides presented evidence on unpleaded self-defense issue).

The District says that it did not expressly consent to trial of Dr. Humphries's unequal footing/on-going violation claim. The Court agrees. "In order to consent to the trial of an unpleaded issue, a party must have notice of that issue and must be given an adequate opportunity to cure any surprise caused by the amendment." *Hazeltine*, 340 F.3d at 590.

The Court has reviewed its notes from all the hearings and both phases of the trial. The Court sees no clear statement from the District that it recognizes the theory as being in the case and has no objection to its adjudication. Dr. Humphries, according to the Court's notes, did mention this issue at the August 2010 summary-judgment hearing. During her argument seeking judgment as a matter of law that the policies were invalid, Dr. Humphries drew a distinction between relief available on the individual-hiring issues and relief available if the policies were invalid, which (she said) did not require an analysis of the hiring decisions. The Court made a note about being perplexed by this point, but the argument drifted to other

-19-

matters.  Dr. Humphries did not elaborate.  And the District did not, as best the Court can remember, respond or agree that forward-looking injunctive relief remained a live issue whether race decided the promotion issue or not.

The Court has also reviewed the parties' briefs—those on summary judgment, those related to the various hearings, and those after the bench part of the case.  All these papers are silent on an unequal footing/on-going violation theory for injunctive relief even if the District would not have promoted Dr. Humphries apart from the affirmative action policies.  The Court sees no express consent by the District.

The cases teach that "trial of unpled issues by implied consent is not lightly to be inferred."  *Triad Elec. & Controls, Inc. v. Power Sys. Eng'g Inc.*, 117 F.3d 180, 193 (5th Cir. 1997); *see also Hazeltine*, 340 F.3d at 590.  The standard is a "demanding" one. 340 F.3d at 590.  Dr. Humphries contends that the case on validity was the case on validity; the injection of her unequal footing/on-going violation claim would not change the evidence or the parties' direct and cross examination of the witnesses; this theory, she continues, is just a specific variation on legal themes she has long pressed, a more precise legal argument for why she remains entitled to some relief.

The Court is not persuaded that this perspective accurately captures the situation. First, the District was entitled to frame its witness examinations and its evidence after notice of exactly what Dr. Humphries claimed and what relief she sought. Bringing a new theory in late eliminates this opportunity. *Hazeltine*, 340 F.3d at 590–91.

Second, this case was tried about the past, not the future. In particular, there was no proof about planned future applications. The Court specifically recalls that (during the jury phase) Dr. Humphries's lawyer asked her what position she wanted to be holding in three years or five years. Dr. Humphries did not answer that question; she made another point instead. If a continuing-violation claim was being tried, then the Court would have heard testimony (at some point) about letters of interest in 2008, 2009, and 2010 (and received those letters into evidence) and heard testimony about Dr. Humphries's plans to keep applying for promotion. None of that proof was offered.   *Compare Clark*, 295 F.3d at 814–16. The proof in both phases looked backward, not forward.

Third, overlap between the evidence on Dr. Humphries's claim about what happened in years' past and a claim about an ongoing violation is not dispositive. *Pariser v. Christian Health Care Systems, Inc.*, 816 F.2d 1248, 1253

(8th Cir. 1987). There is much overlap between the validity case as tried and one about future applications on unequal footing. This overlap, however, does not cover the evidentiary gap about Dr. Humphries's plans for the future.

Fourth, and relatedly, there is a lurking standing concern. *E.g., Donahue*, 304 F.3d at 119; *Aiken*, 281 F.3d at 519–20. Dr. Humphries was extraordinarily diligent about applying for open positions between 2003 and 2007. But "past injury,' while presumably affording [her] standing to claim damages . . . , does nothing to establish a real and immediate threat that she would again suffer similar injury in the future.'" *Adarand Constructors, Inc., v. Pena*, 515 U.S. 200, 210–211 (1995), *quoting Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Dr. Humphries testified that the many rejections took their toll and she was worn out with trying. What are her current intentions and future plans? The Court would need more proof, and adversarial briefing, to address this standing concern before reaching the merits of a continuing-violation theory.

The unequal footing/on-going violation theory and related injunctive relief would carry the Court directly into constitutional issues. While this Court sits to adjudicate such claims when squarely presented, it is equally

duty bound not to reach out for them.  A continuing-violation claim was neither presented nor defended at trial. *Hazeltine*, 340 F.3d at 590.  The Court therefore does not find implied consent either.

* * *

The District's motion for judgment as a matter of law or a new trial, *Document No. 213*, is granted in part and denied in part.  Dr. Humphries's motion to amend, *Document No. 217*, is denied.  The Court will enter judgment for the District forthwith.

So Ordered.

_NPMarshall Jr._

D.P. Marshall Jr.
United States District Judge

_28 April 2011_